USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 2/5/2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                        :

DH SERVICES, LLC,            :
                        :
          Plaintiff,    :
                        :        No. 12 Civ. 6153 (RA)
     -v-                :
                        :        OPINION AND ORDER
POSITIVE IMPACT, INC.,    :
                        :
         Defendant.  :
                        :
------------------------------------------------------------X

RONNIE ABRAMS, United States District Judge:

This case arises from a trademark dispute between Plaintiff, a software company that provides a dating application used on mobile phones, and Defendant, a non-profit organization that provides mental health counseling and other services to those affected by HIV. Before the Court is Defendant's motion to dismiss for lack of personal jurisdiction and to dismiss four of the counts in the amended complaint for failure to state a claim. For the following reasons, the Court concludes that it lacks personal jurisdiction over Defendant, and thus need not consider Defendant's motion under Fed. R. Civ. P. 12(b)(6). Because transferring the case is in the interest of justice, however, the Court transfers the case to the United States District Court for the Northern District of Georgia.

## BACKGROUND

Plaintiff DH Services, LLC is software provider with its principal place of business in New York, New York.[1] (Am. Compl. ¶¶ 6, 8.) Since May 2011, Plaintiff has used the marks

---

[1]      The Court draws the following facts from the amended complaint and declarations submitted by the parties. As described in more detail in the following section, on a motion to dismiss for lack of jurisdiction under Fed. R. Civ. P. 12(b)(2) where the Court has not held an evidentiary hearing—as is the case here—the Court must "construe the pleadings and affidavits in the light most favorable to the Plaintiff." Dorchester Fin. Secs., Inc. v. Banco BRJ,

"MISTER" and "MR." in connection with online dating and networking services it provides for its customers.  (Id. ¶ 10.)  Plaintiff owns trademark registrations in those marks.  (Id. ¶ 13.) Additionally, between the filing of its original and amended complaints in this action, Plaintiff acquired the rights to marks used in connection with the "MR. party," an annual event hosted in California that draws attendees from across the country.  (See id. ¶ 8; Decl. of Erin Vivion, June 27, 2013 ("Vivion Decl."), Ex. I.)  Plaintiff's predecessor-in-interest began using the "MR." mark in connection with the party in 2008.  (Am. Compl. ¶¶ 10, 32.)

Defendant is a non-profit organization based in Atlanta, Georgia, that offers education and information about HIV and provides counseling and other services to those affected by HIV. (Id. ¶ 18.)  One of Defendant's programs is titled "M.I.S.T.E.R.," an acronym that represents the phrase "Men's Information Services: Testing, Empowerment, Resources."  (Id.)  Defendant has used that acronym since 2010.  (Id. at ¶¶ 24, 33; Declaration of Paul Plate, July 11, 2013 ("Plate Decl."), ¶ 3.)  According to the amended complaint, Defendant "offers its M.I.S.T.E.R. services exclusively at its location in Atlanta, Georgia and promotes its services primarily to individuals in the greater Atlanta area, including in interstate commerce."  (Id. ¶ 20.)  Defendant asserts that it has no offices, employees, addresses or telephone numbers in New York; that it does not own, lease, or control any real or personal property in New York; and that it does not have a bank account or pay taxes in New York.  (Def.'s Mem. of Law 8.)  Nowhere does Plaintiff dispute these facts.

On April 30, 2012, Plaintiff's counsel received a letter from Defendant's counsel stating that Defendant had received "queries from some of its consumers evincing actual confusion" concerning the "MISTER," "MR." and "M.I.S.T.E.R." marks.  (See Declaration of Mike Rodenbaugh, June 27, 2013 ("Rodenbaugh Decl.") Ex. A at 3-4.)  The letter asked Plaintiff to

S.A., 722 F.3d 81, 85 (2d Cir. 2013).

confirm that it would cease using the marks, and threatened to take "such actions as [Defendant] deem[ed] necessary to protect its proprietary rights" in the event Plaintiff continued to use the marks.  (Rodenbaugh Decl. Ex. A at 4.)  In a follow-up phone call, Defendant's counsel threatened legal action.  (Id. ¶ 4.)

Plaintiff filed its complaint in this action on August 10, 2012.  (Dkt. No. 1.).  The original complaint sought a declaratory judgment that Plaintiff's "MISTER" and "MR." marks (the marks it had used since May 2011) did not infringe Defendant's mark (used since 2010).  It also asserted claims for unfair competition and unlawful deceptive acts, under common law and New York law, based on Defendant's "cease and desist" letter and the parties' subsequent phone call. (Id.)

After limited jurisdictional discovery, Plaintiff filed an amended complaint.  In addition to asserting the claims from the original complaint, the amended complaint added a trademark infringement and Lanham Act unfair competition claim.  In support of these claims, Plaintiff asserted that it had become the "senior user" of the "MISTER" and "MR." marks, based on the common law rights it had acquired in the mark associated with the "MR." party (allegedly used since 2008).  (See Am. Compl. ¶¶ 32-47.)

Defendant filed the instant motion several weeks after submission of the amended complaint.

**DISCUSSION**

The Court first considers Defendant's motion to dismiss for lack of jurisdiction.  Because the Court concludes that it does not have personal jurisdiction over Defendant, it declines to consider the motion to dismiss for failure to state a claim.

The showing a plaintiff must make to overcome a defendant's motion to dismiss for lack

of jurisdiction "varies depending on the procedural posture of the litigation." <u>Dorchester Fin.</u>
<u>Secs., Inc. v. Banco BRJ, S.A.</u>, 722 F.3d 81, 84 (2d Cir. 2013).  Where, as here, the Court
permits limited discovery but does not hold an evidentiary hearing, the plaintiff must make a
"*prima facie* showing" of personal jurisdiction from the pleadings and affidavits.  <u>Id.</u> at 85.
Conclusory allegations will not suffice to meet this burden; plaintiff must make a "specific
averment" of facts that are "sufficiently supported." <u>S. New England Tel. Co. v. Global NAPS</u>
<u>Inc.</u>, 624 F.3d 123, 138 (2d Cir. 2010).  The plaintiff "must establish the court's jurisdiction with
respect to *each* claim asserted." <u>Sunward Elecs., Inc. v. McDonald</u>, 362 F.3d 17, 22 (2d Cir.
2004).

In assessing the sufficiency of the submissions, the Court "construe[s] the pleadings and
affidavits in the light most favorable to plaintiffs, resolving all doubts in their favor," <u>Dorchester</u>,
722 F.3d at 85, even if defendant has made a "controverting presentation" that causes the Court
to question the authenticity or veracity of plaintiff's evidence, <u>id.</u> at 87.

## 1.    Governing Law

To determine whether it has personal jurisdiction over Defendant, the Court must engage
in a two-step inquiry.  First, because "this is a federal question case where [the] defendant resides
outside the forum state and the relevant federal statute does not specifically provide for national
service of process," the Court applies "the forum state's personal jurisdiction rules." <u>Marvel</u>
<u>Characters, Inc. v. Kirby</u>, 726 F.3d 119, 128 (2d Cir. 2013) (alterations omitted); <u>see</u> <u>Sunward</u>
<u>Elecs., Inc. v. McDonald</u>, 362 F.3d 17, 22 (2d Cir. 2004).  The Court thus looks to New York
law.  Second, the Court considers "whether an exercise of jurisdiction under th[is] law[ ] is
consistent with federal due process requirements." <u>Grand River Enters. Six Nations, Ltd. v.</u>
<u>Pryor</u>, 425 F.3d 158, 165 (2d Cir. 2005).  Because the Court concludes that jurisdiction is lacking

under New York law, its analysis focuses only on the first step.

At the onset, the Court must draw a distinction between "general or all-purpose jurisdiction, and specific or conduct-linked jurisdiction." <u>Daimler AG v. Bauman</u>, 134 S. Ct. 746, 751 (2014). A court has general jurisdiction over a defendant when the defendant's "continuous corporate operations within a state are so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." <u>Id.</u> (alteration omitted). Specific jurisdiction, on the other hand, rests on the premise that "the commission of some single or occasional acts of the corporate agent in a state may sometimes be enough to subject the corporation to jurisdiction in that State's tribunals with respect to suits relating to that in-state activity." <u>Id.</u>

Nowhere does Plaintiff's amended complaint assert that the Court has general jurisdiction over Defendant. Instead, Plaintiff asks the Court to exercise specific jurisdiction over Defendant. (Am. Compl. ¶ 4.) It relies on New York's long-arm jurisdiction statute, which provides:

> As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary [who] . . . 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or 2. commits a tortious act within the state[;] . . . or 3. commits a tortious act without the state causing injury to person or property within the state . . . if he . . . expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce . . . .

N.Y. C.P.L.R. § 302(a). Because Plaintiff asserts that subsections 302(a)(1), (a)(2), and (a)(3) all provide a basis for exercising jurisdiction over Defendant, the Court examines each provision in turn.

2.      **Whether Defendant Transacted Business in New York Under § 302(a)(1)**

In order to demonstrate that an individual "transacted business" within the meaning of § 302(a)(1), "there must have been some purposeful activities within the State that would justify bringing the nondomiciliary defendant before the New York courts." SPCA of Upstate New York, Inc. v. Am. Working Collie Ass'n, 18 N.Y. 3d 400, 404 (2012).  Purposeful activities "are those with which a defendant, through volitional acts, avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Fischbarg v. Doucet, 9 N.Y.3d 375, 380 (2007).  Not every "transaction," however, will give rise to jurisdiction under § 301(a)(1).  The plaintiff must also establish "some articulable nexus between the business transacted and the cause of action sued upon." SPCA, 18 N.Y.3d at 404.

The New York Court of Appeals has described § 302(a)(1) as a "single act statute," meaning that "proof of one transaction in New York is sufficient to invoke jurisdiction . . . so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." Kreutter v. McFadden Oil Corp., 71 N.Y.2d 460, 467 (1988).  At the same time, "no single event or contact connecting defendant to the forum state need be demonstrated; rather, the *totality of all defendant's contacts* with the forum state must indicate that the exercise of jurisdiction would be proper." Grand River, 425 F.3d at 166.  Thus, a defendant's "ongoing course of conduct or relationship in the state may" establish jurisdiction under this provision, even when it has not performed an "individual act" sufficient to confer jurisdiction." Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 673 F.3d 50, 62 (2d Cir. 2012).  Ultimately, "it is the quality of the defendant['s] New York contacts that is the primary consideration" when determining whether jurisdiction is appropriate under § 302(a)(1). Id.

Accordingly, the Court first examines whether Defendant has committed a single act sufficient to confer jurisdiction, then considers whether the "totality of all defendant's contacts" establish an "ongoing course of conduct or relationship in the state" such that the Court may exercise jurisdiction over it.

     *a. Purchases from New York-based Vendors*

Plaintiff first argues that Defendant has transacted business in New York because it has ongoing relationships with suppliers in New York.  (<u>See</u> Pl.'s Mem. of Law in Opposition at 9.) In support of this assertion, Plaintiff has submitted various invoices showing Defendant's purchases of what appear to be medical and office supplies from vendors based in New York. (<u>See</u> Vivion Decl. Ex. F.)

The Court is skeptical that by purchasing gauze pads and other supplies from companies based in New York, Plaintiff "avail[ed] itself of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws." <u>Fischbarg</u>, 9 N.Y.3d at 380. As Judge Lynch has noted, "the language of § 302(a)(1) itself casts doubt on the possibility of *in personam* jurisdiction based solely on the purchase by an out-of-state defendant of goods from a New York seller." <u>Stengel v. Black</u>, No. 03 Civ. 495(GEL), 2003 WL 1961638, at *2 n.1 (S.D.N.Y. Apr. 25, 2003).   Because the statute expressly provides jurisdiction "over a defendant who 'contracts anywhere to *supply* goods or services in the state,'" Judge Lynch explained, "the statute would appear to rule out the possibility that "'transacting business within the state' was intended to encompass those who contract to *purchase* goods from a New York supplier." <u>Id.</u>

Consistent with this reasoning, the Second Circuit in <u>Beekman Paper Co. v. National Paper Products</u>, 909 F.2d 67, 69 (2d Cir. 1990), found it "inconceivable" that New York's long-arm statute, "however liberally construed," could support jurisdiction over a Texas company

7

whose only contact with New York was the purchase of paper from a New York company, even though the lawsuit centered on the Texas company's alleged failure to pay for the paper.  The New York Court of Appeals, in <u>M. Katz & Son Billiard Products v. Correale & Sons</u>, 20 N.Y.2d 903, 904 (1967), similarly dismissed for lack of jurisdiction an action brought by a New York company against a New Jersey company, where the alleged basis for jurisdiction was the New Jersey company's purchase of billiards equipment.  Although the two companies had been doing business for thirty years, the Court found that the purchases "did not constitute purposeful acts sufficient to sustain jurisdiction" under the analogue to § 302(a)(1).

Even if the Court were to conclude that Plaintiff's purchases in this case constituted "transactions" within the meaning of the statute, there is no "articulable nexus" between the purchases and the "cause of action sued upon," namely, the alleged trademark infringement. <u>SPCA</u>, 18 N.Y.3d at 404.  All of the invoices are made out to "Positive Impact"; none mentions or displays the allegedly infringing "M.I.S.T.E.R." mark.  (<u>See</u> Vinion Decl. Ex. F.)  The Court is similarly unable to discern any connection between the purchases and Plaintiff's claims for common law unfair competition and unlawful deceptive acts under New York law.  Without the necessary nexus, these purchases cannot support personal jurisdiction.

      *b.*     *Defendant's Letter and Telephone Call*

Plaintiff next argues that Defendant's April 30, 2012 letter—demanding that Plaintiff cease using its marks and threatening to take action if it did not—and subsequent telephone call provide the basis for § 302(a)(1) jurisdiction.  (Pl.'s Mem. of Law in Opposition at 8.)  Second Circuit precedent forecloses this argument.

In <u>Beacon Enterprises, Inc. v. Menzies</u>, 715 F.2d 757, 759-60 (2d Cir. 1983), the Circuit addressed circumstances nearly identical to those in this case: defendant, a California resident,

8

sent a letter to plaintiff, a New York corporation, threatening legal action if the company did not

stop selling one of its products, a garment which defendant claimed infringed one of her

trademarks.  Plaintiff brought suit in New York, seeking a judgment declaring that its product

did not infringe defendant's intellectual property rights, and relying, in part, on the "cease and

desist" letter as a jurisdictional hook.  The Circuit held that the letter did not constitute a

"transaction" under § 302(a)(1), explaining that "[i]t is difficult to characterize [defendant's]

letter alleging infringement in an unspecified locale and threatening litigation in an unspecified

forum as an activity invoking the 'benefits and protections' of New York law."  Id. at 766.

 Here, Defendant's "cease and desist" letter merely threatened "to take such actions as it

deems necessary to protect its proprietary rights."  (Rodenbaugh Decl. Ex. A at 4.)  In the

subsequent phone call, according to the description from Plaintiff's counsel, Defendant's counsel

stated that Defendant "would initiate legal proceedings to cancel the mark" if Plaintiff did not

cease using the mark.  (Id. ¶ 4.)  Neither of these communications evinces an intent to invoke the

protections of New York law, and they cannot support jurisdiction under § 302(a)(1), as

construed by Beacon Enterprises.

 The Court notes that Plaintiff in this case relied on Marvel Worldwide, Inc. v. Kirby, No.

10 Civ. 141(CM), 2010 WL 1655253, at *5 (S.D.N.Y. Apr. 14, 2010), which found § 302(a)(1)

jurisdiction over out-of-state defendants who sent letters to New York entities purporting to

terminate the entities' rights in certain copyrights.  In a decision handed down after the instant

motion was fully briefed, the Second Circuit vacated this portion of the District Court's opinion.

Marvel Characters, Inc. v. Kirby, 726 F.3d 119, 131 (2d Cir. 2013).  Relying on Beacon

Enterprises, the Circuit concluded that the termination notices did not "constitute a purposeful

availment of 'the benefits and protections of New York's laws.'"  Id. at 130 (alteration omitted).

      *c.*      *Defendant's Promotion of Fundraising Events*

      Plaintiff also asserts that certain activities Defendant performed through its website subject it to personal jurisdiction in New York.

      The first type of activity Plaintiff focuses on is Defendant's advertising of fundraiser events it hosted in partnership with Atlanta-area bars and nightclubs.  (<u>See</u> Pl.'s Mem. of Law in Opposition at 8.)  Plaintiff offers print-outs showing the advertisements, hosted through the social networking website Facebook, in which Defendant promotes fundraiser events and displays the "M.I.S.T.E.R." mark.  (Vivion Decl. Ex. B-1 at 1, 9.)  Defendant asserts that these activities confer jurisdiction because at least some individuals from New York attended the events.  (<u>Id.</u> ¶ 3.)  To show that individuals from New York attended the events, Defendant has provided printouts from Facebook showing that individuals with New York-based accounts confirmed their attendance on the social media website, and were listed under the event's "going" tab (as opposed to the "invited" tab).  (<u>See, e.g.</u>, <u>id.</u> Ex. B-1 at 2, 3.)

      The "advent of the internet" has of course created "a new set of challenges" regarding personal jurisdiction.  <u>Citigroup Inc. v. City Holding Co.</u>, 97 F. Supp. 2d 549, 565 (S.D.N.Y. 2000).  In confronting these challenges, the Second Circuit has remarked that a framework first advanced in <u>Zippo Manufacturing Company v. Zippo Dot Com, Inc.</u>, 952 F. Supp. 1119 (W.D. Pa. 1997), "may help frame the jurisdictional inquiry" in personal jurisdiction cases involving the internet, <u>Best Van Lines, Inc. v. Walker</u>, 490 F.3d 239, 252 (2d Cir. 2007).  The <u>Zippo</u> Court described a sliding scale, based on the degree to which users could interact with a particular website:

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is

proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

Zippo, 952 F. Supp. at 1124 (citations omitted).

Here, the Court concludes that the internet activity lies somewhere in the middle of the Zippo spectrum, but is more akin to the type of "passive" websites described in the second category.  The posting at issue here is in many ways similar to advertisements placed in nationally-circulated newspapers.  Courts have repeatedly found that a defendant's placement of such advertisements does not confer jurisdiction under § 302(a)(1).  See, e.g., Panacea Solutions, Inc. v. Roll, No. 05 Civ. 10089(RCC), 2006 WL 3096022, at *3 (S.D.N.Y. Oct. 31, 2006); Maranga v. Vira, 386 F. Supp. 2d 299, 308 (S.D.N.Y. 2005).  A Facebook user's ability to indicate that he or she will be attending an event certainly makes the website more interactive— and undoubtedly permits Defendant to obtain additional information not available in traditional forms of advertising—but still does not amount to the "transaction" of business.  Nowhere does Defendant's evidence suggest that users could purchase tickets to the events or exchange money electronically.  Instead, a New York user would be required to travel to Atlanta to attend the event, and only the purchases he or she made in Atlanta would benefit Defendant.  Personal jurisdiction is not appropriate in these circumstances.  Cf. Pitbull Prods., Inc. v. Universal Netmedia, Inc., No. 07 Civ. 1784(RMB), 2008 WL 1700196, at *6 (S.D.N.Y. Apr. 4, 2008) (finding jurisdiction lacking under § 302(a)(1) where defendant's website contained only message boards and a blog and did not permit users to purchase goods or services); Seldon v.

11

Direct Response Techs., Inc., No. 03 Civ. 5382(SAS), 2004 WL 691222 (S.D.N.Y. Mar. 31, 2004) ("Interactive message boards alone do not give rise to long-arm jurisdiction.").

        d.     *Defendant's Solicitation and Receipt of Donations Through Its Website*

        Plaintiff next asserts that because Defendant's website offers users the opportunity to donate, and because several individuals from New York have in fact donated through the website, Defendant has "transacted" business in the state.  According to the evidence Plaintiffs have submitted, four individuals from New York have made donations through the website since 2010, for a total of $480.  (Vinion Decl. Ex. F at 3.)  Defendant calculates that these donations from New York residents accounted for 0.24% of total donations received during that period (Plate Decl. ¶ 16), and Plaintiff makes no attempt to dispute this figure.

        The Second Circuit in Best Van Lines, Inc. v. Walker, 490 F.3d at 254-55, confronted the question of whether a defendant's receipt of donations on its website from New York-based individuals is sufficient to establish personal jurisdiction under § 302(a)(1).  The plaintiff in that case, who brought a defamation claim against the defendant website operator, argued that personal jurisdiction was proper because individuals donated to the website due to its allegedly overwhelmingly negative and defamatory content.  Id. at 254.  Judge Sack, writing for the Court, rejected this argument, calling the relationship between the donations and the allegedly defamatory conduct "so attenuated" and "so insubstantial" that jurisdiction was inappropriate. Id. at 254-55.

        Here, the printout Plaintiff has offered of the section of the website where users can make contributions is entitled "One Time Contributions for Positive Impact."  (Vinion Decl. Ex. B-2 at 1.)  Nowhere does the page display the "M.I.S.T.E.R." mark.  (Id. at 1-2.)  The spreadsheet Defendants offer showing information about the four New York donors also has a column

indicating the "campaign" to which the individuals donated; again, nowhere is the phrase "M.I.S.T.E.R." used.  (Id. Ex. F. at 3.)  Even assuming the mark is displayed on other areas of the website, the connection between the donations and the conduct giving rise to this lawsuit would be at best a loose one.  This Court's decision in Sills v. Ronald Reagan Presidential Foundation, Inc., No. 09 Civ. 1188(GEL), 2009 WL 1490852 (S.D.N.Y. May 27, 2009), provides a helpful contrast to the facts in this case, and demonstrate what constitutes an appropriate nexus.  In that case, defendants had actively solicited a substantial donation from plaintiff, and plaintiff's lawsuit was based on a claim that defendants had not used the donation as plaintiff had directed.  Judge Lynch concluded that plaintiff had established the "requisite nexus" for jurisdiction under § 302(a)(1).  See id. at *9 ("This lawsuit, stemming from plaintiff's displeasure with the way his donations were used, is not a mere tangential by product of the Foundation's New York-based transaction of business; it is a direct product of its successful endeavor to procure plaintiff's beneficence.").  Here, no evidence suggests that the online donations from New York residents were related to Defendant's use of the allegedly infringing mark.

The Court is also hesitant to conclude that by accepting these donations Plaintiff has purposely "avail[ed] itself of the privilege of conducting activities" within New York, "invoking the benefits and protections of its laws."  Indeed, Judge Lynch appeared to recognize the consequences of such a ruling when he remarked in Sills that "it may not necessarily be the case that a registered charity 'transacts business' in New York anytime it solicits a contribution."  Id. at *8.  Although the Circuit in Best Van Lines noted that the receipt of donations through a website "might constitute doing business in New York," 490 F.3d at 254, unlike in that case, here no evidence suggests that Defendant had a significant following in New York or otherwise

targeted residents of the state in soliciting donations or promoting its message more generally. Defendant rightly points out that, by subjecting it to personal jurisdiction based on essentially *de minimis* contributions made from a website accessible in any jurisdiction, the Court's ruling could have serious consequences for non-profit organizations.  (Def.'s Reply Mem. at 6.) Although the Court's analysis is based only on the New York statute, it joins at least one other court in noting the potential due process issue such a holding might create.  See Mothers Against Drunk Driving v. DAMMADD, Inc., No. Civ.A. 302CV1712G, 2003 WL 292162, at *6-*7 (N.D. Tex. Feb. 7, 2003) (declining to find specific jurisdiction based on defendant's receipt of five contributions through its website, totaling two percent of total donations, and noting the potential due process implications).

   e.   *Defendant's Receipt of Grants from New York-based Foundations*

   Finally, Plaintiff argues that Defendant has transacted business in New York because it has received grants from three foundations based in New York.  (Pl.'s Mem. of Law in Opposition at 4, 9.)  This argument is unpersuasive for the reason described above: even assuming the receipt of funds constitutes a transaction, Plaintiff has failed to demonstrate a nexus between Defendant's receipt of the grants and the alleged trademark infringement (or any of the other claims asserted in the complaint).

   The vast majority of documents related to these grants make no mention of the "M.I.S.T.E.R." mark.  (See Vinion Decl. Exs. D, E.)  Each of the grants is awarded to Positive Impact, not to "M.I.S.T.E.R."  (See id.)  Indeed, of all the documents Plaintiff offers to show that Defendant received grants from New York-based organizations, only one document so much as mentions the "M.I.S.T.E.R." mark.  (See id. Ex. E at 30-35.)[2]  This document relates to a grant

---

[2]   Because the pages in Exhibit E are unnumbered, citations are to ECF pagination.

Defendant received from the MAC Aids Fund, which was disbursed in April 2009, to fund the "Gay Men's HIV Prevention Program" through March 31, 2010. (Id. Ex. E at 27, 35-36.)  In this report, written after March 31, 2010 to assess the success of the grant program, Defendant is asked how it intends to change its program in the future; it responds by noting that it has decided to "move away from [its] identity," that it has rebranded the program under the name "M.I.S.T.E.R.," and that it hopes for "additional future funding opportunities with MAC AIDS." (Id. Ex. E at 33.)

The relationship between this single document and Plaintiff's cause of action is too attenuated to sustain jurisdiction over Defendant.  Plaintiff has not offered evidence to show that MAC AIDS awarded Defendant the grant (or any other funds) on the basis of the "M.I.S.T.E.R." mark; indeed, the evidence shows that Defendant began using the mark only after it had received the MAC AIDS project funds.  (See id. Ex. E at 38 (award letter stating that the grant is "to support the Gay Men's HIV Prevention Program").)  At best, the evidence shows that the grant indirectly supported the program and activities giving rise to the infringing conduct.  But the Second Circuit rejected a similar argument in Best Van Lines, concluding that although the online donations the defendant received may have indirectly supported his defamatory conduct, the connection was insufficient to sustain jurisdiction under § 302(a)(1).

Plaintiff relies heavily on the Second Circuit's decision in Chloé v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158 (2d Cir. 2010).  In that case, a trademark infringement claim arising out of the sale of counterfeit bags bearing the high-end designer Chloé's mark, the Circuit suggested that the sale of a single counterfeit Chloé bag into New York "might well be sufficient" to establish jurisdiction under § 302(a)(1). Id. at 170.  The Circuit also noted, however, that the defendant sold fifty-two bags bearing other designers' labels into New York,

and concluded that the District Court construed the § 302(a)(1) "nexus" requirement too

narrowly when it found these sales irrelevant to the personal jurisdiction analysis. Id. at 167.

In Chloé, however, the transaction that conferred personal jurisdiction under § 302(a)(1)

*was* the conduct underlying the lawsuit: the defendant's sale of the bag depended on the use of

the infringing mark. Here, despite the opportunity to obtain discovery on the issue, Plaintiff has

not offered evidence of a single grant that Defendant solicited or obtained by using the allegedly

infringing mark. Indeed, the only reference to the "M.I.S.T.E.R." mark comes in a document

written long after Defendant received the grant at issue, with no suggestion that the award had

anything to do with Defendant's use of the allegedly infringing mark. The Court thus concludes

that "the event giving rise to the plaintiff's injury had, at best, a tangential relationship to [the]

contacts the defendant had with New York." Chloé, 616 F.3d at 167 (quoting Solé Resort, S.A.

de C.V. v. Allure Resorts Mgmt., LLC, 450 F.3d 100, 104 (2d Cir.2006)).

> f.    *Totality of Defendant's Contacts*

Although the Court concludes that none of Defendant's contacts with New York satisfies

§ 302(a)(1), it must also consider whether the totality of these contacts satisfies the statute. See

Grand River Enters. Six Nations, Ltd. v. Pryor, 425 F.3d 158, 166 (2d Cir. 2005) (noting that "no

single event or contact connecting defendant to the forum state need be demonstrated; rather, the

*totality of all defendant's contacts* with the forum state must indicate that the exercise of

jurisdiction would be proper").

Here, Plaintiff has failed to make a *prima facie* showing that Defendant has engaged in

"an ongoing course of conduct or relationship in the state" sufficient to support jurisdiction under

§ 302(a)(1), notwithstanding the lack of a single transaction that satisfies the provision's

requirements. Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 673 F.3d 50, 62 (2d Cir.

2012).  According to evidence submitted by Defendant, which Plaintiff has not attempted to contest, in fiscal year 2010-2011 Defendant received 2.1% of its funding from foundations based in New York; in 2011-2012 that number decreased to 1.2%; and in 2012-2013 the preliminary estimate stood at 1.01%.  (Plate Decl. ¶ 15.)  As described above, the four donations Defendant has received from New York donors since 2010 accounted for 0.24% of all donations it received during that period.  (Id. ¶ 16.)  Moreover, Plaintiff cannot dispute that Defendant offers all of its services in Atlanta, all of its clients are physically present in Atlanta at the time they obtain those services, and all of the events Defendant hosted—as well as the other events benefiting Defendant—took place in Atlanta.  Aside from the grants Defendant has received from the three New York-based foundations—representing a small portion of the organization's total funding— Plaintiff has not offered any evidence that Defendant's employees traveled to New York to solicit funds, or that they made any concerted efforts to obtain online donations from individuals or entities located in New York.  The Court thus finds that Plaintiff has failed to show jurisdiction is proper under § 302(a)(1).

**3.  Whether Defendant Has Committed a "Tortious Act" in New York Under § 302(a)(2)**

Defendant next argues that jurisdiction is proper under § 302(a)(2), which provides for jurisdiction over a defendant who "commits a tortious act within the state."  This argument is unpersuasive because it conflicts with the Second Circuit's holding in Bensusan Restaurant Corp. v. King, 126 F.3d 25 (2d Cir. 1997).

In Bensusan, defendant operated "The Blue Note" nightclub in Missouri; plaintiff operated a nightclub with the same name in New York.  After unsuccessfully requesting that defendant remove its website, plaintiff filed suit for trademark infringement and unfair competition in New York, asserting personal jurisdiction under § 302(a)(2).  The Circuit

affirmed the district court's dismissal for lack of personal jurisdiction, concluding that "§ 302(a)(2) reaches only tortious acts performed by a defendant who was physically present in New York when he performed the wrongful act."  Id. at 28.  In light of this conclusion, the Court found that the "acts giving rise to [plaintiff's] lawsuit—including the authorization and creation of [defendant's] web site, the use of the words 'Blue Note' and the Blue Note logo on the site, and the creation of a hyperlink to [plaintiff's] web site—were performed by persons physically present in Missouri and not in New York."  Id. at 29.

　　　Plaintiff appeals to several lines of authority in an attempt to distinguish Bensusan, none of which has merit.  It cites three district court cases that found personal jurisdiction where defendants sold infringing goods into New York through the internet; each of these opinions, however, concluded that jurisdiction was proper under the "transacted business" provision, § 302(a)(1), and did not consider § 302(a)(2).  See Pearson Educ., Inc. v. Shi, 525 F. Supp. 2d 551, 556-57 (S.D.N.Y. 2007); New Angle Pet Prods., Inc. v. MacWillie's Golf Prods., Inc., No. 06-CV-1171(DRH), 2007 WL 1871345, at *3 (E.D.N.Y. June 28, 2007); Rubin v. City of N.Y., No. 06 Civ. 6524(HB), 2007 WL 950088, at *3 (S.D.N.Y. Mar. 29, 2007).  As described above, the Court finds that Plaintiff cannot establish personal jurisdiction under § 302(a)(1): this case is distinguishable from those involving a defendant's shipment of infringing goods into New York based on a customer's online order.  Plaintiff also relies on several cases, all of which pre-date Bensusan, concluding that targeted solicitation (such as direct mailings or the distribution of order forms) in New York sufficed for jurisdiction under § 302(a)(2).  See Pilates, Inc. v. Pilates Inst., Inc., 891 F. Supp. 175, 180 (S.D.N.Y. 1995); Honda Assocs., Inc. v. Nozawa Trading, Inc., 374 F. Supp. 886, 888-89 (S.D.N.Y. 1974).  Here, there is no evidence that Defendant engaged in a targeted advertising campaign in New York using the allegedly infringing mark.

The only other case Plaintiff cites in support of its argument cuts against it.[3]  In Citigroup Inc. v. City Holding Co., 97 F. Supp. 2d 549, 567 (S.D.N.Y. 2000), the Court explained, consistent with Bensusan, that "in the case of web sites displaying infringing marks the tort is deemed to be committed where the web site is created and/or maintained."[4]

Here, Plaintiff asserts that the tortuous act Defendant committed in New York was its use of the "M.I.S.T.E.R." mark on its website.  (See Pl.'s Mem. of Law in Opposition at 13; see also Am. Compl. ¶ 33.)  The Court thus looks to "where the web site [was] created and/or maintained."  Citigroup, 97 F. Supp. 2d at 567; see also Yash Raj Films (USA) Inc. v. Dishant.com LLC, No. 08-CV-2715, 2009 WL 4891764, at *8 (E.D.N.Y. Dec. 15, 2009) ("[N]umerous courts have declined to view the advent of the internet as a means to drastically expand the applicability of § 302(a)(2), and instead have adhered to the view that in the case of websites displaying infringing marks the tort is deemed to be committed where the website is created and/or maintained.").  According to Defendant, the website is created and maintained in Atlanta, and hosted on servers in Massachusetts and Texas.  (Plate Decl. ¶ 4.)  Plaintiff has offered no evidence to the contrary, and has thus failed to carry its burden.

**4.      Whether Defendant Committed a Tort with Reasonably Foreseeable Consequences in New York Under § 302(a)(3)**

The last potential basis for exercising personal jurisdiction over Defendant is § 302(a)(3), which permits jurisdiction over a defendant who

> commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of

---

[3]      Plaintiff also cites Alcoholics Anonymous World Servcs., Inc. v. Friedman, 1992 WL 150633 (S.D.N.Y. June 17, 1992), which addressed the issue of venue, and Zippo Mfg. Co. v. Zippo Dot Com, 952 F. Supp. 1119, 1125-27 (W.D. Pa. 1997), which not only addressed personal jurisdiction under the Due Process Clause, but also involved facts distinguishable from those in this case.

[4]      Although the Citigroup Court ultimately concluded that jurisdiction under § 302(a)(2) could be proper based on the defendant's ability to "chat" with customers and display infringing marks, here there is no such allegation.

character arising from the act, if he

(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

N.Y. C.P.L.R. § 302(a)(3).

Plaintiff claims that jurisdiction is appropriate under both prongs of § 302(a)(3).  (Pl.'s Mem. of Law in Opposition at 14.)  Its argument under § 302(a)(3)(i) fails, however, and can be addressed briefly.  As described above, only a small portion—about two percent or less—of Defendant's donations and total funding comes from New York-based individuals and entities.  These funds do not amount to "substantial revenue."  See Murdock v. Arenson Int'l USA, Inc., 554 N.Y.S.2d 887, 889 (1st Dep't 1990) (concluding that a defendant that made 0.05% of its total sales in New York did not derive "substantial revenue" from the state for purposes of 302(a)(3)(i)).  Nor does Defendant regularly do or solicit business, or engage "in any other persistent course of conduct" in New York.  That individuals in New York can continuously access—and, in a limited way, interact with—Defendant's website is insufficient to establish § 302(a)(3)(i) jurisdiction.  See Girl Scouts of U.S. v. Steir, 102 Fed. App'x 217, 220 (2d Cir. 2004) ("[T]he mere fact that [plaintiffs'] website, which invites only limited interactive content, is continuously accessible to New York residents does not establish the sort of persistent course of conduct in the state fairly to require [plaintiffs] to answer in New York for their out-of-state actions in maintaining the website.").

Whether jurisdiction is appropriate under § 302(a)(3)(ii) requires a more extensive analysis.  The New York Court of Appeals has explained that jurisdiction under that provision

requires plaintiff to demonstrate five elements:

> First, that defendant committed a tortious act outside the State; second, that the cause of action arises from that act; third, that the act caused injury to a person or property within the State; fourth, that defendant expected or should reasonably have expected the act to have consequences in the State; and fifth, that defendant derived substantial revenue from interstate or international commerce.

LaMarca v. Pak-Mor Mfg. Co., 95 N.Y.2d 210, 214 (2000).

As these elements make clear, the necessary starting point for analysis under

§ 302(a)(3)(ii) is to determine whether defendant "committed a tortuous act outside the State."

Here, Plaintiff identifies two potential tortious acts: "Defendant's marketing of an infringing

trademark via its website, Facebook and other means," and "Defendant's unfounded legal threat

to Plaintiff's trademark rights." (Pl.'s Mem. of Law in Opposition at 14.) Neither is sufficient to

sustain jurisdiction under § 302(a)(3)(ii).

    *a.*    *Use of the Allegedly Infringing Mark*

The Court assumes, for purposes of this analysis, that Plaintiff's use of the allegedly

infringing mark on its website constitutes "a tortious act" committed "outside the State." It

further assumes that Plaintiff has established the second and third elements of § 302(a)(3)(ii):

that Counts One and Two of Plaintiff's amended complaint—asserting trademark infringement

and false designation of origin under Sections 32 and 43(a) of the Lanham Act—"arise[ ] from

that act, and that the act "caused injury to a person or property within the State."[5]

It is with respect to the fourth element that Plaintiff encounters trouble. Not only must

Plaintiff demonstrate that Defendant's action caused injury in New York, it must also make a

---

[5]     Counts Three through Five of Plaintiff's amended complaint seek a declaratory judgment that Plaintiff did not infringe any of Defendant's rights. These causes of action do not "arise from" any tortious act; indeed, Plaintiff seeks a declaration that no tortious act has occurred. Counts Six and Seven of the amended complaint, asserting claims for unfair competition and unlawful deceptive acts and practices under common law and New York law, do not "arise from" the alleged trademark infringement. Instead, they "arise from" Plaintiff's "cease and desist letter," which the Court addresses in the following section.

*prima facie* showing that Defendant "expected or should reasonably have expected the act to have consequences in the State." LaMarca, 95 N.Y.2d at 214.  This test "is an objective rather than subjective one." Kernan v. Kurz-Hastings, Inc., 175 F.3d 236, 241 (2d Cir. 1999).  To ensure that the provision is construed in a manner consistent with federal due process requirements, New York courts require "tangible manifestations of a defendant's intent to target New York, or . . . concrete facts known to the nondomiciliary that should have alerted it to the possibility of being brought before a court in the Southern District of New York." Royalty Network Inc. v. Dishant.com LLC, 638 F. Supp. 2d 410, 424 (S.D.N.Y. 2009).  Applying this provision in the context of trademark and copyright infringement claims, courts have examined whether defendant knew (or should have known) that a New York company or individual held the intellectual property rights, see id. at 424, and whether defendant made a "discernible effort to directly or indirectly serve the New York market," Capitol Records LLC v. VideoEgg, Inc., 611 F. Supp. 2d 349, 363 (S.D.N.Y. 2009).

Defendant could not reasonably have been expected to know that Plaintiff held the rights to the mark upon which it premises its trademark infringement and false designation of origin claims.  Importantly, the amended complaint bases those claims on Plaintiff's infringement of the "MR." mark used in connection with the "MR. party" since 2008—not on infringement of Plaintiff's other marks, used since 2011, because presumably Defendant's use of its mark beginning in 2010 would preclude any trademark infringement claim with respect to those marks.[6]  (See, e.g., Am. Compl. ¶¶ 32-34, 43-44; Plate Decl. ¶ 3)  Defendant did not acquire the rights in the mark associated with the "MR. party," however, until January 15, 2013.  (See

---

[6]     Plaintiff's amended complaint alleges only that Defendant "admits on its website" that it did not begin using the "MISTER" mark until 2010. (Am. Compl. ¶ 33.)  That allegation, as Plaintiff stressed at oral argument, is not a concession that Defendant actually began using the mark in 2010.  Defendant offered evidence that it has been using the "MISTER" mark since "early 2010," however, and Plaintiff has not offered any evidence suggesting otherwise. (See Plate Decl. ¶ 3.)

Vivion Decl. Ex. I.)

Defendant thus did not acquire its rights in the mark until five months after it commenced this lawsuit.  Plaintiff could not have known, at the time the original complaint was filed, that a New York company owned the mark at issue—because, at that time, a California entity held those rights.  (See Vivion Decl. Ex. I.)  One might argue that once Plaintiff learned during the pendency of this suit that Defendant had acquired the rights, it became subject to personal jurisdiction in New York.  The Court declines to reach such a conclusion.

Plaintiff has not cited any case in which a court exercised personal jurisdiction over a defendant based on events that occurred between the filing of an initial and amended complaint. Instead, in the relatively sparse case law to address the issue, courts have reached the opposite conclusion.  In ISI Brands, Inc. v. KCC Int'l, Inc., 458 F. Supp. 2d 81, 88 (E.D.N.Y. 2006), a trademark case, the Court declined to find personal jurisdiction based on plaintiff's purchase of defendant's infringing good that occurred between the filing of the original and amended complaints.  Similarly, in Lauren Eirk Enters., LLC v. Bryant-Cunha, No. 3:12-CV-127, 2013 WL 163433, at *7 (W.D. Ky. Jan. 15, 2013), also a trademark infringement case, the Court declined to find personal jurisdiction based on events that occurred in connection with settlement discussions that took place between the filing of the initial and amended complaints.  Other authorities from within the Circuit have rejected plaintiffs' assertions of personal jurisdiction based on events that occurred after the filing of a lawsuit, although in these cases plaintiff never sought to file an amended complaint.  See Hearst Corp. v. Goldberger, No. 96 Civ. 3620, 1997 WL 97097, at *12 (S.D.N.Y. Feb. 26, 1997) (Peck, M.J.); Greene v. Sha-Na-Na, 637 F. Supp. 591, 595 (D. Conn. 1986).  In this case, although Plaintiff may have acquired the right to sue for violations of the rights in the mark related to the "MR. party," that acquisition has no bearing on

the personal jurisdiction analysis: it does not mean Defendant was aware that it was infringing the trademark rights of a New York corporation.

The Court also concludes that Plaintiff has failed to show that Defendant made a "discernible effort to directly or indirectly serve the New York market," Capitol Records, 611 F. Supp. 2d at 363, when it displayed the "M.I.S.T.E.R." mark on its website.  Plaintiff has not offered any evidence showing that Defendant actively solicited individuals from New York to make online donations or attend its fundraiser events, all of which were hosted in Atlanta and required individuals to travel to Atlanta to participate.  (See Plate Decl. ¶ 10.)  Defendant's use of the "M.I.S.T.E.R." mark on its website cannot sustain personal jurisdiction, because Plaintiff has not shown that Defendant expected, or could reasonably have expected, consequences in New York.

  b. *Pre-litigation Communication*

The other potentially "tortious acts" Plaintiff identifies as a basis for § 302(a)(3)(ii) jurisdiction are Defendant's April 30, 2012 "cease and desist" letter and a subsequent phone call. The Court concludes that neither of these communications constitute "tortious acts," and therefore cannot support an exercise of personal jurisdiction.

At the outset, the Court notes that although its analysis of whether an act is "tortious" may well overlap with an assessment of a motion to dismiss for failure to state a claim, other courts in this district have performed a similar inquiry; found that plaintiff failed to demonstrate that defendant's act was tortious; and dismissed claims for lack of personal jurisdiction, without relying on Fed. R. Civ. P. 12(b)(6).  See, e.g., Segal v. Bitar, No. 11 Civ. 4521(LBS), 2012 WL 273609, at *7-*8 (S.D.N.Y. Jan. 30, 2012); E-Z Bows, L.L.C. v. Professional Prod. Res. Co., No. 00 Civ. 8670(LTS), 2005 WL 535065, at *19 (S.D.N.Y. Mar. 8, 2005).

The amended complaint first asserts that these acts amount to common law unfair competition, because they constitute "a plan of attack against Plaintiff."  (Am. Compl. ¶ 65.) "The essence of an unfair competition claim under New York law is that the defendant misappropriated the fruit of plaintiff's labors and expenditures by obtaining access to plaintiff's business idea either through fraud or deception, or an abuse of a fiduciary or confidential relationship." Telecom Int'l America, Ltd. v. AT&T Corp., 280 F.3d 175, 197 (2d Cir. 2001). Additionally, "there must be some showing of bad faith." Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc., 58 F.3d 27, 35 (2d Cir. 1995).

Even assuming Defendant's "cease and desist" letter and subsequent phone call could be characterized as attempts to "misappropriate[ ] the fruit of plaintiff's labors," Telecom Int'l, 280 F.3d at 197, Plaintiff has made no showing that Defendant acted in bad faith in making the communications.  The allegations of Plaintiff's amended complaint, coupled with its submissions in connection with this motion, demonstrate why.  Plaintiff's amended complaint alleges that Defendant is liable for trademark infringement because Plaintiff acquired the rights in the "MR. party"—used by Plaintiff's predecessor-in-interest since 2008—and is thus the senior user of the mark, because Defendant did not begin using its own "M.I.S.T.E.R." mark until at least 2010. (Am. Comp. ¶¶ 32-34, 41-44.)  But according to Plaintiff's own submissions, it did not acquire those rights from its predecessor-in-interest until January 2013.  (Vivion Decl. Ex. I.) Accordingly, when Defendant sent the "cease and desist" letter in April 2012, Plaintiff had not yet acquired the rights.  As of that date, Defendant had at least a plausible, if not meritorious, claim that it was the senior user and Plaintiff was infringing its mark: according to the complaint, Defendant had used the mark since 2010,[7] whereas Plaintiff had not begun using it until 2011 (Am. Compl. ¶¶ 10, 33.)  Plaintiff's own allegations defeat any suggestion that Defendant acted

---

[7]        See supra note 6.

in bad faith in making the letter or phone call.  These acts therefore do not amount to unfair competition.

Nor do these acts constitute unlawful deceptive acts and practices under New York General Business Law § 349.  To make a *prima facie* showing under this provision, plaintiff must demonstrate "(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result."  Maurizio v. Goldsmith, 230 F.3d 518, 521 (2d Cir. 2000).  In suits alleging violations of § 349, "the gravamen of the complaint must be consumer injury or harm to the public interest."  Securitron Magnalock Corp. v. Schnabolk, 65 F.3d 256, 264 (2d Cir. 1995).

Courts in this district have found that plaintiffs failed to state a claim under this provision "[w]here the only alleged harm is that which is generally associated with violations of intellectual property law."  Eliya, Inc. v. Kohl's Dep't Stores, No. 06 Civ. 195(GEL), 2006 WL 2645196, at *8 (S.D.N.Y. Sept. 13, 2006); see Sports Traveler, Inc. v. Advance Magazine Publishers, Inc., No. 96 Civ. 5150(JFK), 1997 WL 137443, at *3 (S.D.N.Y. Mar. 24, 1997). Here, the only harm to the public interest Plaintiff can articulate is "that which is generally associated with violations of intellectual property law," Eliya, 2006 WL 2645196, at *8: it asserts in its memorandum that the harm to the public interest is that Defendant is "[u]sing deceptive practices to deprive New York consumers of legitimate goods and service, and/or to confuse existing users of such services."  (Pls.' Mem. of Law in Opposition at 22.)  These are precisely the harms courts have found do not state a violation of § 349.

*     *     *

Plaintiff cannot establish that Defendant's "cease and desist" letter, or subsequent phone communication, amount to "tortious acts" committed "outside the State."  Plaintiff has thus

failed to make a *prima facie* showing of personal jurisdiction under § 302(a)(3), or under any other provision of New York's jurisdictional statute.

**5.      Plaintiff's Request for Additional Discovery and To File an Amended Complaint**

Plaintiff requests that it be given the opportunity to conduct additional discovery, in the event that the Court concludes that it lacks jurisdiction over Defendant.  That request is denied.

Plaintiff has already received the opportunity to make several document requests and interrogatories.  (Dkt. No. 23).  In response to those requests, it received approximately 45,000 pages of documents (Vivion Decl. ¶ 4), and had almost two months to review those documents before responding to Defendant's motion to dismiss (Declaration of Olivia Harris, June 10, 2013, ("Harris Decl.") ¶ 4; Dkt. No. 33).  Despite receiving these materials, Plaintiff has failed to make a *prima facie* showing that Defendant has sufficient contacts with New York to merit the exercise of personal jurisdiction.  The Court does not find any of the areas Plaintiff wishes "more leeway to explore" (Pl.'s Mem. in Opposition at 23) through additional discovery are likely to bolster the arguments about personal jurisdiction it has already made.

The Court also denies Plaintiff's request for leave to amend its complaint.  It has already received the opportunity to file an amended complaint, and nowhere in its motion or at oral argument did it describe what additional facts it would allege, or how it would structure its claims differently so as to support an exercise of personal jurisdiction.  See City of Monroe Emps. Ret. Sys. v. Hartford Fin. Servs. Grp., Inc., No. 10 Civ. 2835(NRB), 2011 WL 4357368, at *23 n.61 (S.D.N.Y. Sept. 19, 2011) (denying leave to amend where plaintiffs "failed to indicate the content of any new pleading").

6.      **Transfer of the Action**

When a district court concludes that it lacks personal jurisdiction over the defendant, it may transfer the action to another district court under 28 U.S.C. § 1406(a) if it concludes that doing so would be "in the interest of justice."  See Daniel v. Am. Bd. of Emergency Medicine, 428 F.3d 408, 435 (2d Cir. 2005); Corke v. Sameiet M.S. Song of Norway, 527 F.2d 77, 80 (2d Cir. 1978).  Court enjoy "considerable discretion" when deciding whether transfer is appropriate. Daniel, 428 F.3d at 435.

Although the Second Circuit has not provided an exhaustive list of the factors courts should consider when deciding whether to transfer a case, it has explained that a "compelling reason for transfer is generally acknowledged when a plaintiff's case, if dismissed, would be time-barred on refiling in the proper forum."  Id.  The Circuit has also looked to whether transfer would result in a hardship to either party, Corke, 527 F.2d at 80; whether the court to which the action is transferred would likely be able to exercise personal jurisdiction over the defendant, id.; and whether the case appears to be a "sure loser in the court that has jurisdiction," Daniel, 428 F.3d at 436.

Here, the Court concludes that transfer to the United States District Court for the Northern District of Georgia is appropriate.  Venue and jurisdiction would almost certainly be proper in that district, although the Northern District of Georgia will of course make the ultimate decision.  See, e.g., Bauminger Export Corp. v. Beaumont Iron & Metal Corp., No. 85 Civ. 4621, 1986 WL 1799, at *4 (S.D.N.Y. Feb. 6, 1986) (concluding that personal jurisdiction was lacking and transferring case, between New York-based plaintiff and Texas-based defendant, to the Eastern District of Texas).  Similarly, while this Court expresses no view as to whether Plaintiff will ultimately succeed on its claims, it is by no means clear at this point that Plaintiff's lawsuit

is a "sure loser," id., such that transfer would be inappropriate.  And, because the appropriate statute of limitations would likely be determined by reference to Georgia law, see Kason Indus., Inc. v. Component Hardware Grp., Inc., 120 F.3d 1199, 1203-04 (11th Cir. 1997), transfer is proper to ensure that Plaintiff is not unfairly subject to a statute of limitations or laches defense based on its decision to commence litigation in this Court.

Finally, the Court takes judicial notice that on January 24, 2014, Defendant brought suit against Plaintiff in the Northern District of Georgia, alleging trademark infringement and other claims arising out of Plaintiff's use of the MISTER mark.[8]  See Complaint, Positive Impact, Inc. v. DH Servs., LLC, No. 14 Civ. 212 (N.D. Ga. Jan. 24, 2014).  The existence of a pending action, arising from essentially identical facts, is another factor that weighs strongly in favor of transfer.  See Scarola Ellis LLP v. Skyworks Ventures, Inc., No. 09 Civ. 10003(DLC), 2010 WL 3452381, at *5 (S.D.N.Y. Sept. 1, 2010) ("Transfer will also promote trial efficiency because it will permit consolidation of this action with the New Jersey action, both of which arise out of the same transactions.").  Although the parties suggested at oral argument that transfer might be unnecessary because Plaintiff in this case may raise its claims as counterclaims in that lawsuit, this Court defers to the Northern District of Georgia on whether the suits should continue to be maintained separately.

## CONCLUSION

Defendant's Motion to Dismiss Plaintiff's Amended Complaint for Lack of Personal Jurisdiction is GRANTED, and the Court denies as moot, without prejudice to re-filing at a later date, the portion of its motion that seeks to dismiss four counts in Plaintiff's amended complaint for failure to state a claim.

---

[8]     Defendant also brought a separate suit against Plaintiff in the Northern District of Georgia, but filed a notice of voluntary dismissal in that action on January 24, 2014.  See Notice of Voluntary Dismissal, Positive Impact, Inc. v. DH Servs., LLC., No. 13 Civ. 3210 (N.D. Ga. Jan. 24, 2014).

The Clerk of Court is respectfully requested to close the motion pending at docket

number 28 and to transfer the case to the United States District Court for the Northern District of

Georgia.

SO ORDERED.

Dated:      February 5, 2014
            New York, New York

Ronnie Abrams
United States District Judge

30